UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JONATHAN NAUGLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV01943 ERW |
| ) | |
| DOLLAR GENERAL, INC., and ) | |
| DOLGEN CORP, INC., ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment or, in the Alternative, Dismissal [doc. #34].

## **I.  PROCEDURAL BACKGROUND**

Jonathan Naugles ("Plaintiff") filed a *pro se* Complaint [doc. #1] against Dollar General, Inc. and Dolgen Corp, Inc. (collectively, "Defendants" or "Dollar General") on December 15, 2008. In his Complaint, Plaintiff alleged employment discrimination on the basis of race, gender, age, and criminal background, in addition to retaliation. On July 30, 2009, this Court granted Defendants' Motion for Partial Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismissed with prejudice Plaintiff's claims of discrimination based on criminal background under the Second Chance Act of 2007 [doc. #23]. Subsequently, on October 19, 2009, Defendants filed the pending Motion for Summary Judgment or, in the Alternative, Dismissal [doc. #34]. Plaintiff filed his Response [doc. #38] on November 15, 2009.

## II. BACKGROUND FACTS[1]

The Court begins by noting that, in a Motion for Summary Judgment, the Local Rules require the nonmoving party to "include a statement of material facts as to which the party contends a genuine issue exists," and to provide specific references to the record for those matters contested by the nonmoving party. Local Rule 7-4.01(E). Any matters that are not specifically controverted by the nonmoving party are deemed admitted for the purpose of summary judgment. *Id.* Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

In addition, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to respond to a Motion for Summary Judgment, but the party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." This requires the nonmoving party to present "'more than a scintilla of evidence.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007)). The district court "'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005)).

---

[1] The Court's recitation of the facts is taken from Defendants' Statement of Undisputed Facts [included in doc. #35]. The Court also considered the exhibits submitted by the Parties, where appropriate.

In this case, Plaintiff's Response to Motion for Summary Judgment [doc. #38] does not include a statement of material facts as to which Plaintiff contends a genuine issue exists at all, nor one that properly conforms to the requirements of the Local Rules and the Federal Rules of Civil Procedure. Plaintiff does not controvert any of the facts set forth by Defendants, so the Court will deem admitted each fact contained within Defendants' Statement of Undisputed Facts for the purpose of the pending Motion for Summary Judgment.

Turning now to the facts of this case, Dollar General is a retailer of basic consumable goods, items that are frequently used by consumers, including cleaning supplies, health and beauty aides, foods/snacks, housewares, toys, and basic apparel. In September 2008 (the time at issue in this Complaint), Dollar General operated approximately 6,000 stand-alone stores. Each Dollar General store operates under the direction and supervision of a Store Manager, who is the highest level supervisory personnel in the store. In the supervisory chain of command, the person above the Store Manager is the District Manager, who is responsible for a territory that may contain from fifteen to twenty-five stores. In addition, each Dollar General store is staffed with an Assistant Store Manager, Lead Sales Associate, and multiple Sales Associates. All employees are required to possess the ability to perform both stocking and cashiering functions, including running the register and interacting with the public.

Plaintiff alleges that he applied for work at Dollar General Store # 1242 in Belridge, Missouri. This store had, at the time at issue, fourteen employees, twelve of whom were Sales Associates. The Store Manager was Randy Jordan (African-American male, age 37 at the time of the events at issue), and the Assistant Store Manager was Carl Doss (African-American male, age

3

59 at the time of the events at issue). The District Manager responsible for Dollar General Store # 1242 was Terrell Lynom (African-American male, age 40 at the time of the events at issue).

Plaintiff has a long criminal record involving serious, violent crimes. Dollar General's pre-employment background check revealed that in January 1998, Plaintiff was sentenced to three years in prison for Armed Criminal Action, seven years for Stealing from a Person, and ten years for Robbery - First Degree. Just six months later, Plaintiff was in court again, this time pleading guilty to a count of Felony Robbery and to a count of Felony Armed Criminal Action, each of which netted him an eleven year concurrent prison sentence. Dollar General discovered in its background check that Plaintiff had just completed ten years in prison for felony robbery and felony armed criminal action when he applied for work at Dollar General. Plaintiff admitted to his criminal record - and admitted that he was on parole when he applied at Dollar General - in his responses to Dollar General's requests for admissions. Plaintiff remained on parole until June 2009.

Plaintiff confusingly alleges that he applied for work with Dollar General either on June 13, 2008, or September 12, 2008. To add to the confusion, Plaintiff produced in discovery a copy of his employment application, which is dated September 19, 2008. Dollar General's records reflect that Plaintiff applied on September 19, 2008. On his employment application, Plaintiff admitted that he was convicted of a crime, but in the space in which he was asked to explain the crime, he wrote, "will explain at interview." Based on the application, Dollar General made Plaintiff an offer of employment contingent upon the successful completion of a criminal background check and a drug screen.

Plaintiff alleges in his Complaint that he was employed by Dollar General from September 12, 2008 to September 24, 2008. However, in another instance of self-contradiction, Plaintiff's Complaint also states that he did not start work until September 23, 2008. Dollar General, for its part, has no record that Plaintiff ever actually worked for the company; instead, Dollar General's records show that Plaintiff's contingent offer of employment was revoked when Dollar General received notification that Plaintiff did not meet employment criteria based on his extensive criminal record.

Dollar General's corporate Human Resources Department contracts with an outside vendor to conduct criminal background checks on all persons to whom contingent offers of employment are made. Plaintiff's criminal background check revealed his extensive criminal history. Dollar General is a retailer whose employees handle merchandise and large amounts of cash. Its employees also may be in a store alone with customers or with another employee. Dollar General therefore has a consistently-applied and non-discriminatory policy of only employing people that either have no criminal history, or whose criminal history is not related by its nature to tasks performed by Dollar General employees, or is sufficiently remote in time as not to be job-related. Pursuant to this neutral policy, Plaintiff's offer of employment was rescinded when his criminal background check revealed his numerous convictions for violent crimes, such as armed robbery and armed criminal action, and his recent release from incarceration.

At the time at issue in this case, the management personnel of Dollar General Store # 1242, including the District Manager, were all African-American, as were twelve of the store's fourteen employees. Additionally, at the time Plaintiff sought employment, six of the store's employees, including the Assistant Manager, were older than Plaintiff, and the entire management

5

team, including the District Manager, were male. Plaintiff claims that he was fired on September 24, 2008, and the next person hired at the store after that date was John Hancock, who is an African-American male, and who was 69 years old when he was hired (24 years older than Plaintiff). Mr. Hancock was hired on October 4, 2008, only days after Plaintiff claims that he was fired, and well before Plaintiff filed an EEOC charge or otherwise put Dollar General on notice of his allegations.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any

material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the absence of any genuine issue of material fact. *Id.* at 323; *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson*, 943 F.2d at 883.

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

7

## IV. DISCUSSION

In this action, Plaintiff seeks to recover for race and gender discrimination and retaliation under Title VII, and for age discrimination under the Age Discrimination in Employment Act ("ADEA"). The Court will now address each of Plaintiff's claims.

### A. DISCRIMINATION BASED ON RACE AND GENDER - TITLE VII

Plaintiff alleges in his Complaint that Defendants discriminated against him on the basis of his race and gender, in violation of Title VII of the Civil Rights Act of 1964. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The plaintiff in a Title VII case has the initial burden of setting forth a *prima facie* case of discrimination. *See McConnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In order to do so, the plaintiff must show: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff was qualified to perform his or her job; (3) that the plaintiff suffered an adverse employment action; and (4) that similarly situated employees outside of the protected class were treated differently. *See id*.

In this case, Plaintiff is unable to establish two of the four elements of his *prima facie* case. First, Plaintiff cannot demonstrate that he was qualified to perform the job at issue, because of Dollar General's consistently-applied and non-discriminatory policy of only employing people that either have no criminal history, or who have criminal history that is not related by its nature to tasks performed by Dollar General employees, or that is sufficiently remote in time as not to be job-related. At the time of his application, Plaintiff had extensive criminal history, which included

multiple convictions for violent crimes and for crimes related to stealing. The conduct underlying these convictions is highly relevant to Plaintiff's ability to perform the tasks demanded of Dollar General employees. Moreover, at the time that Plaintiff applied for a position with Dollar General, he had only recently been released from prison, and was still on parole. Thus, based on the policies of Dollar General, this Court concludes that Plaintiff was not qualified to perform the job at issue. Second, Plaintiff cannot demonstrate that similarly situated employees outside of the protected class were treated differently, because it is undisputed that Dollar General's criminal history policy is and was consistently applied in a non-discriminatory manner.

Because Plaintiff is unable to establish a *prima facie* case of discrimination on the basis of race or gender, the Court need not proceed with the burden shifting analysis under *McDonnell-Douglas*. *See* 411 U.S. at 802-804 (providing that if the plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to the employer to articulate a nondiscriminatory reason for the employment action; if the employer is able to do so, the plaintiff then must show that the proffered reason is pretextual). The Court does note, however, that even if Plaintiff were able to establish a *prima facie* case, any inference of discrimination would be dispelled by the hiring history of the particular Dollar General store at issue. More specifically, it is undisputed that the management personnel of Dollar General Store # 1242, including the District Manager, were all African-American, as were twelve of the store's fourteen employees. Additionally, the management personnel were all male. Moreover, the person who was hired immediately after Plaintiff was supposedly fired (or was not hired) was John Hancock, an African-American male.

Thus, the Court finds that Defendant is entitled to summary judgment in its favor with respect to Plaintiff's claims of race and gender discrimination under Title VII.

## B. DISCRIMINATION BASED ON AGE - ADEA

Plaintiff also alleges in his Complaint that Defendants discriminated against him on the basis of his age, in violation of the ADEA. Under the ADEA, an employer is prohibited from discriminating against an employee because of his or her age. *See* 29 U.S.C. § 623(a). "A plaintiff may establish her claim of intentional age discrimination through either direct evidence or indirect evidence." *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009).[2] This case is based on indirect evidence of age discrimination. Although a recent United States Supreme Court opinion has called into question whether the *McDonnell-Douglas* burden shifting framework applies in cases involving indirect evidence of age discrimination, the Court will look at current Eighth Circuit precedent, which utilizes the *McDonnell-Douglas* approach. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2349 n.2 (2009).[3]

Applying the *McDonnell-Douglas* burden-shifting framework to the case at hand, Plaintiff must first establish a *prima facie* case of age discrimination. In order to do so in the context of the ADEA, Plaintiff must establish: (1) that he was in the protected age group (over forty); (2) that he was qualified to perform the job; (3) that he suffered an adverse employment action; and (4) that the position was filled with a younger worker. *See Wingate v. Gage County Sch. Dist.*,

---

[2]"Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009). Cases involving only indirect evidence are those in which the plaintiff is only able to set forth circumstantial evidence of discrimination. *See Loeb v. Best Buy Co., Inc.*, 537 F.3d 867, 872 (8th Cir. 2008).

[3]This Court engaged in an extensive analysis of the impact of the *Gross* case on ADEA cases involving indirect evidence of discrimination in *Farnsworth v. Covidien, Inc.*, 2010 WL 147812, at *12-*13 (E.D. Mo. Jan. 11, 2010).

*No. 34*, 528 F.3d 1074, 1079 n.3 (8th Cir. 2008); *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004).

Again, Plaintiff is unable to establish two of the elements of the *prima facie* case. First, Plaintiff cannot demonstrate that he was qualified to perform the job. As set forth in the preceding section, Plaintiff's history of criminal charges made him unqualified for employment under Dollar General's criminal history policy. Second, Plaintiff cannot demonstrate that the position was filled with a younger worker. The first employee hired to work in Dollar General Store # 1242 after the events at issue in this case was John Hancock, who is twenty-four years older than Plaintiff.

Thus, the Court finds that Defendant is entitled to summary judgment in its favor with respect to Plaintiff's claim of age discrimination under the ADEA.

### C.  RETALIATION - TITLE VII

Finally, Plaintiff alleges that Defendants retaliated against him because he "oppos[ed] discrimination." (Pl.'s Complaint, doc. #1, p.5). Under Title VII of the Civil Rights Act of 1964, an employer is prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: "1) []he engaged in protected conduct; 2) a reasonable employee would have found the challenged retaliatory action materially adverse; and 3) the materially adverse action was causally linked to the protected conduct." *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007).

11

In this case, although Plaintiff engaged in protected conduct when he filed his charge with the EEOC on November 18, 2008, he cannot demonstrate that the adverse action was causally linked to the filing of the charge. According to the undisputed facts in this case, the adverse action, whether it was termination or failure to hire, occurred in September, while Plaintiff did not file his EEOC charge until November. Plaintiff has failed to identify any protected conduct in which he was engaged before the adverse employment action. Thus, Plaintiff has not alleged facts sufficient to establish a claim of Title VII retaliation.

The Court finds that Defendant is entitled to summary judgment in its favor with respect to Plaintiff's claim of retaliation under Title VII.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment or, in the Alternative, Dismissal [doc. #34] is **GRANTED**. Plaintiff's claims against Defendants are **DISMISSED, with prejudice**.

Dated this 24th Day of March, 2010.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE